**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        **v.**                                **04-CR-222S - 05**

**CHRISTOPHER RUSSO,**

        **Defendant.**

_____

**REPORT, RECOMMENDATION AND ORDER**

This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

**PRELIMINARY STATEMENT**

The defendant, Christopher Russo ("the defendant"), is charged along with thirteen co-defendants in a multicount indictment with having violated Title 21 U.S.C. §§ 841(c)(2), 846 (Count 1), §§ 841(b)(1)(A), 846 (Count 2), § 841(c)(2) and Title 18 U.S.C. § 2 (Count 5), and a forfeiture count (Count 8) pursuant to Title 21 U.S.C. §§ 853(a)(1), 853(a)(2), 853(a)((3) and 853(p). (Docket #8).

The defendant has filed a motion wherein he seeks "suppression of electronic eavesdropping evidence." (Docket #58). The defendant asserts that "there is a lack of probable cause and necessity for the issuance of the eavesdropping

warrants" and therefore, "all evidence derived from the use of electronic eavesdropping should be suppressed."  (Docket #58, ¶ 75).

## FACTS

On May 14, 2004, the Hon. John T. Elfvin issued an Order authorizing the interception of wire communications pursuant to Title 18 U.S.C. § 2518 to and from the "telephone facility bearing the number 716/947-0163, a residential telephone subscribed to by Sandra Jacobi," and telephone number "716/863-8669," a "cellular telephone subscribed to by Jacobi's Restaurant, c/o John/Sandy Jacobi, 1404 Abbott Road, Buffalo, New York" based on the affidavit of Special Agent ("S.A.") Mark Gentile of the DEA sworn to May 14, 2004.  Thereafter, orders extending the authorization for the interception of wire communications to and from the aforesaid telephones were issued on June 11, 2004 by the Hon. William M. Skretny, and on July 9, 2004 by the Hon. John T. Elfvin.  Although the defendant is not listed as an "interceptee/violator in any of these orders, conversations in which the defendant was a participant were intercepted pursuant to the aforesaid Orders and therefore, the defendant is an "aggrieved person" under 18 U.S.C. § 2510(11).

## DISCUSSION AND ANALYSIS

The defendant admits that prior to obtaining the May 14, 2004 Order, the investigation had "yielded some evidence that [the defendant] was contacted by [the co-defendant] Stevens to act as a courier in the Bruneau-Mishal Epedrine network" but

argues that "there is no evidence that [he] knew the use of the Ephedrine or that he even participated in any of the deliveries or pick ups of Ephedrine or that he had any role in the organization at all or that he distributed chemicals to any other person." The defendant further asserts that "there is no evidence that intercepting phone calls on [co-defendant] Stevens' telephone from [the defendant] reveal anything about distribution of methamphetamine or a role of the end users or suppliers in any conspiracy" and that "any claim that interceptions from a wiretap of [co-defendant] Hugh Stevens' telephone [would] reveal involvement of others [was] pure conjecture."  (Docket #58, ¶¶ 93, 94).

As a result, the defendant argues that "there was no probable cause to believe that [he] was committing or about to commit offenses that were greater or different than acting as an agent to obtain a courier between [the co-defendants] Bruneau and Mishal and Stevens at the time of the May 14th application."  (Docket #58, ¶ 91).

The defendant also argues that "there was a lack of necessity for the issuance of each of the wiretap orders at issue" since "law enforcement had already obtained significant evidence as to [co-defendant] Stevens' complete role in the alleged conspiracy" (Docket #58, ¶ 96) and that "ordinary law enforcement techniques could have been easily used to determine the method of disposing of or hiding the proceeds of the illegal activity."  (Docket #58, ¶ 98).

As a result of these alleged deficiencies, the defendant asserts that "the wiretap evidence should be suppressed." (Docket #58, ¶ 101).

### A. The Probable Cause Issue:

Basically, the defendant is requesting that a review of Judge Elfvin's decision in issuing the Intercept Order of May 14, 2004 be made so as to conclude that such order was improperly issued. The role of this Court in conducting such a review is no different than that conducted by a court of appeals and therefore, the admonition of the Second Circuit Court of Appeals is appropriately applied in this process wherein the court stated**:**

> "In reviewing a ruling on a motion to suppress wiretap evidence, we accord deference to the district court." *Miller*, 116 F.3d at 663 (quoting *Torres*, 901 F.2d at 231). Our role in reviewing the issuance of a wiretap order is not to make a *de novo* determination of the sufficiency of the application, "but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *Id.*

*United States v. Diaz*, 176 F.3d 52, 109 (2d Cir.), *cert. denied* by *Rivera v. United States*, 528 U.S. 875 (1999).

S.A. Gentile submitted an affidavit sworn to May 14, 2004 consisting of sixty-two typewritten pages wherein he described in substantial detail an "overview of [a] drug trafficking organization" in which a number of the co-defendants herein were participants during the period "between June 2003 and May 2004" (May 14, 2004

-4-

affidavit of S.A. Gentile, ¶ 72) based on a joint investigation conducted by United States and Canadian law enforcement agencies.  S.A. Gentile iterates specific details of drug activity by the various co-defendants in conjunction with other members of the drug trafficking organization.  (*See* May 14, 2004 affidavit of S.A. Gentile).  An agent's training and experience can be considered in determining whether probable cause exists for the issuance of a warrant.  *U.S. v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985), *cert. denied*, 486 U.S. 1043 (1987).

As the Second Circuit Court of Appeals has stated, "the standard for probable cause applicable to [18 U.S.C.] § 2518 is 'the same as the standard for a regular search warrant.  Under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983), probable cause for a search warrant is established if the totality-of-the-circumstances' indicate a probability of criminal activity.  *See id.* at 230-32, 103 S.Ct. 2317."  *United States v. Diaz,* 176 F.3d at 110.  Considering the totality of the circumstances set forth in the Affidavit of S.A. Gentile in support of the application for the May 14, 2004 intercept order, the facts set forth in the application were adequate to support a finding of probable cause for the issuance of the May 14, 2004 intercept order and such finding is in further deference to the findings made by Judges Elfvin and Skretny in authorizing the Order of May 14, 2004 and the subsequent Orders at issue.  *United States v. Diaz,* 176 F.2d at 109.

Although the defendant was not named as a "target" or "interceptee/violator" in any of the applications and orders at issue herein, the conversations that were intercepted wherein he was a participant involved conversations with a named "target" or "interceptee/violator" against whom probable cause had been found by the initial order of Judge Elfvin issued on May 14, 2004.

> [T]he failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization.

*United States v. Donovan*, 429 U.S. 413, 435 (1977); *United States v. Miller*, 116 F.3d 641, 644 (2d Cir. 1997).

Therefore, it is RECOMMENDED that defendant's motion to suppress the "electronic eavesdropping evidence" on the basis that there was "no probable" cause for the issuance of the eavesdrop orders at issue be DENIED.

### B.    The Lack Of Necessity Issue:

The defendant argues that because the law enforcement agencies "had already obtained significant evidence as to [co-defendant] Stevens' complete role in the alleged conspiracy" prior to the obtaining of the May 14, 2002 intercept order, "there was a lack of necessity for the issuance of each of the wiretap orders at issue." (Docket #58, ¶ 96).

In his affidavit of May 14, 2004, S.A. Gentile acknowledged that "substantial information [had] been gathered against [Stevens] from both the Buffalo Resident Office and the DEA Sacramento Division Office investigations" but asserted that the investigations had "not revealed the full scope of [Stevens'] activities" and that "interceptions of conversations over the target telephones [would] result in the seizure and admissibility of highly relevant and incriminating conversations between [Stevens, Stevens'] sources of supply, other known interceptees, and as yet unknown co-conspirators."

> Title 18 U.S.C. § 2518(1)(c) requires that:
> a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

The application for the Intercept Order of May 14, 2004 was based upon a sixty-two (62) typewritten page affidavit of S.A. Gentile of the DEA wherein he describes in great detail the history of the investigation to date and information obtained based on use of confidential informants, physical surveillance, pen registers and review of toll records. S.A. Gentile states that these normal avenues of investigation have been evaluated for use or have been attempted with only limited results. He further states that the convening of a federal grand jury, interview of subjects and the execution of search warrants would not be likely to succeed and would undoubtedly alert the target subjects of the investigation. This position was reiterated by S.A. Gentile in his subsequent affidavits of June 11 and July 9, 2004 submitted in support of the

applications for extensions of the May 14, 2004 Order.  (June 11, 2004 affidavit, ¶¶ 30, 31; July 9, 2004 affidavit, ¶¶ 34, 35).  Once again, the training and experience of the agent can be considered in this context of "necessity."  *United States v. Fama, supra*.

Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied* 498 U.S. 906 (1990), addresses the issue raised by the defendant on whether 18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to sacrifice brevity and set forth that Court's ruling in detail.

> Section 2518(1)(c) requires that an application for such an interception shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."  Similarly, section 2518(3)(c) requires the judge to whom an application for a wiretap is made to determine, as a condition of authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."
>
> The application for the wiretap in this case was based upon a thirty-six page affidavit by DEA agent Timothy J. Sullivan dated May 27, 1987.  Flores contends that when the application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful."  In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id*. at

104. Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).

We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap. Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). As we have stated:

> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *see also United States v. Fury*, 554 F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). And, as the *Scibelli* court went on to say:

> [I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner. The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all "other investigative procedures".
>
> "The judgment [of the district judge] would involve a consideration of all the facts and circumstances. Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What the provision envisions is that the showing be tested in a practical and commonsense fashion.
>
> S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, p.
> *Scibelli*, 549 F.2d at 226 (citations omitted).

*Id.* at 231-232) (brackets included); *See also Diaz, supra* 111.

Although not expressly stated, the defendant is really arguing that the objectives of the investigation were attained prior to the issuance of the May 14, 2004 Order, and therefore, there was no "necessity" for either the issuance of the May 14, 2004 Order or the subsequent Orders of June 11 and July 9, 2004.

Title 18 U.S.C. § 2518(5) provides in pertinent part:

-10-

> Every order and extension thereof shall contain a provision that the authorization to intercept . . . must terminate upon attainment of the authorized objective . . . .

In his affidavit of May 14, 2004, S.A. Gentile states:

> While information obtained from the investigation to date has been probative as to the existence of an ongoing illegal narcotics business, the investigation has not yielded sufficient evidence or ascertained identities of, and proven beyond a reasonable doubt the guilt of, all the participants and co-conspirators in this illegal conspiracy.  This includes the persons to whom the ephedrine is further distributed, the locations where the subjects store the listed chemicals, and the distribution of proceeds from these illegal activities.

(Affidavit of S.A. Gentile, sworn to May 14, 2004, ¶ 99).

This lack of attainment of the objectives of the investigation was reiterated by S.A. Gentile in his affidavits of June 11, 2004 (¶¶ 30-32) and July 9, 2004 (¶¶ 34-36).

Since the identities of others involved in the conspiracy and illegal drug operations had not been established, the "objective of the surveillance had not been attained" as of May 14, 2004 and therefore, there was an established need for the Order of May 14, 2004.  Because the objectives of the investigation had not been obtained during the authorized period established in the May 14, 2004 Order, the affidavits of S.A. Gentile sworn to June 11 and July 9, 2004 further established the necessity for extending the authorization to electronically intercept communications over the target telephones thereby warranting the issuance of the Orders of June 11

and July 9, 2004.  *See United States v. Wong*, 40 F.3d 1347, 1376 (2d Cir. 1994); *cert. denied* 514 U.S. 1113 (1995); *United States v. Earls*, 42 F.3d 1321, 1325 (10th Cir. 1994); *United States v. Brown*, 941 F.2d 656, 659 (8th Cir. 1991).

Giving proper deference to Judge Elfvin's review and acceptance of the sixty-two (62) page affidavit of S.A. Gentile sworn to May 14, 2004 in support of the application for the Intercept Order of May 14, 2004, as well as Judge Skretny's review and acceptance of the application of June 11, 2004 to extend said interceptions, and Judge Elfvin's review and acceptance of the application of July 9, 2004 to further extend the authorization to intercept, it is concluded that Judges Elfvin and Skretny "properly found that conventional investigative techniques had been exhausted and that alternatives to wire interception would be unlikely to succeed or would be too dangerous" and that the objectives of the investigation had not been attained thereby necessitating the Orders of May 14, June 11 and July 9, 2004.

Therefore, it is RECOMMENDED that defendant's motion to suppress the electronic evidence on the basis of "non-necessity" be DENIED.

**CONCLUSION**

Based on the foregoing, it is hereby RECOMMENDED that defendant's motion to suppress all "electronic eavesdropping evidence" be DENIED in its entirety; and it is hereby

**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*,

Simple

474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

> /s/ H. Kenneth Schroeder, Jr.
> **H. KENNETH SCHROEDER, JR.**
> **United States Magistrate Judge**

**DATED:**   **Buffalo, New York**
   **September 2, 2005**